## AMERICAN BRAKE SHOE & FOUNDRY CO. v. ALLTEX PRODUCTS CORPORATION.

### No. 197.

Circuit Court of Appeals, Second Circuit.

March 3, 1941.

Rogers, Hoge & Hills, of New York City (Edward S. Rogers and Clifton Cooper, both of New York City, and George H. Wallace, of Chicago, Ill., of counsel), for plaintiff-appellant.

Alexander D. Smith, of New York City (Harry Malter, of New York City, of counsel; Alexander D. Smith and Isadore B. Hurwitz, both of New York City, on the brief), for defendant-appellee.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

This appeal is from a judgment dismissing a complaint in an action upon a trademark and for unfair competition. The plaintiff is the manufacturer of lining for automobile brakes, used both upon buses and trucks and upon passenger cars. For the heavy work of buses and trucks the lining is moulded into short thick blocks, set at intervals around the periphery of an expanding member which bears against the inside of a friction rim on the wheel. These are universally called "brake blocks" in the trade and the controversy does not concern them; but the same material later came into use for passenger cars,. to some extent replacing earlier brake linings which had a basis of woven fabric. When so used, instead of being moulded into thick short blocks or slabs, the material is made in the same sizes and proportions as fabric lining; i.e. long, narrow strips ordinarily not over three-eighths of an inch thick; but —unlike fabric lining—stiff and hard, rigid arcs of a circle of proper radius, so that they can be fastened to the expanding member. In spite of the fact that pieces so formed are not properly "blocks" the plaintiff has used that name for ·them, selling them as "American Brakeblok," the same name that it uses in selling blocks for buses and trucks. In 1929 it tried to register the plural of this mark—"American Brakebloks"—unsuccessfully then, but successfully in April, 1930. Apparently it did not begin to make linings for passenger cars until the following year; but its position is that the words "brake block," even without the prefix, "American," have acquired a secondary meaning when applied to passenger car linings—though not to buses and trucks—and that the defendant infringes it by the term "National Brake Block" under which it markets its own product of just the same kind. (In 1932 the plaintiff succeeded in securing registry of the singular, "American Brakeblok," but this does not affect its legal position.)

The plaintiff took much testimony of the kind usual in such cases, designed to show that the trade understood by the words "brake block" when applied to the lining for passenger cars, not merely the long, stiff narrow strips of material, made without fabric, but only such linings when manufactured by the plaintiff. A large part of this testimony came from repair shops and service stations which dealt only in the plaintiff's linings, and part of this amounted to no more than that the witnesses supplied the plaintiff's goods when asked for "brake block." So much of it is not material. However, in a number of instances the dealers also declared that to them the words meant only the plaintiff's linings, and that might be evidence of secondary meaning, even though they sold only the plaintiff's goods. Moreover, there were a

number of other witnesses who did sell the linings of other makers, and they too said that they understood that "brake block" simpliciter meant the plaintiff's lining. The testimony was nevertheless not all one way, for the defendant introduced a number of witnesses who said that they distinguished linings by the names of the manufacturers; and that to them "brake block" meant any stiff brake lining even for passenger cars, as distinct from fabric lining. Indeed at times the plaintiff itself has thought it desirable to emphasize the adjective "American" as by saying "insist on *American* Brakeblok—not just 'brake blocks.'" Upon this evidence the judge found that the whole phrase, "American Brakeblok," had acquired a secondary meaning and was entitled to registry under the Act of 1920, but he did not find, as the plaintiff insists that he should have, done, that the words "brake block" alone had a secondary meaning. Believing that the defendant's prefix "National" was a plain enough distinction from the only mark which he was willing to accord the plaintiff, he dismissed the complaint.

We should scarcely feel justified in holding "clearly erroneous" an express finding made on such a record that the plaintiff had not established any secondary meaning for the words "brake block," and in spite of the absence of an express finding we think that the judge's disposition of the case implied the equivalent of such a finding. However, we need not rest our decision on that assumption. It is probably true that there are a substantial number of people who understand "brake block" to mean the plaintiff's linings, and we agree that this might have been enough to justify some relief in spite of the fact that there were also a number who did not so understand it. At times courts have indeed seemed to assume that the owner of a secondary mark loses if he fails to show that substantially everybody supposes the mark to mean not only what it describes but that he, or some single maker or seller, is the source of the goods; but we need not go so far. Arguendo we will assume that if to a substantial part of the trade, though not by any means to all of it, a descriptive term has acquired a secondary meaning, competitors may be required to distinguish their wares in some way that will not impose upon them a disproportionally heavy burden. It is proper, enough to protect a business though only a part of it is hurt; that accords with the principle which constitutes the whole law of the subject. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 412, 413, 414, 36 S.Ct. 357, 60 L.Ed. 713; United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 97, 39 S.Ct. 48, 63 L.Ed. 141; Prestonettes, Inc. v. Coty, 264 U.S. 359, 368, 44 S.Ct. 350, 68 L.Ed. 731; Caron Corp. v. V. Vivadou, Inc., 2 Cir., 4 F.2d 995, 996, 997; Parfumerie Roger & Gallet v. M. C. M. Co., Inc., 2 Cir., 24 F.2d 698, 699; Industrial Rayon Corp. v. Dutchess Underwear Corp., 2 Cir., 92 F.2d 33, 35.

In the case at bar this might have led us to give some relief, even though we did not forbid all use of the words "brake block," except for the way in which these goods are marketed. Apparently, unscrupulous· dealers substitute the defendant's linings for the plaintiff's when they know that the owner wants the plaintiff's; and indeed there is some evidence that the defendant's own salesmen have advised dealers to. do just this. On this account the plaintiff invokes the well settled doctrine that a make-up which facilitates substitution to the consumer is unlawful, however well informed the jobber or retailer may be. Federal Trade Commission v. Winsted Hosiery Co., 258 U.S. 483, 494, 42 S.Ct. 384, 66 L.Ed. 729; William R. Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 530, 44 S.Ct. 615, 68 L.Ed. 1161; Andrew Jergens Co. v. Bonded Products Co., 2 Cir., 21 F.2d 419, 424. Here too the repair shops and service stations are themselves not misled; they know what they want and they get it. One of them did indeed say that he was a little confused by the defendant's title "National Brake Block"; but not even he had bought the defendant's lining for the plaintiff's. It is the car owners whom the repair shops and service stations deceive, for there are owners who prefer the plaintiff's linings and expect to get them when they ask for "brake block." Yet when an owner takes his car to the shop he does not watch it while it is being relined; or, if in rare instances he may, which does not appear, he does not know what lining is put on. Ordinarily he goes away, and when he comes back, he takes the car as it is delivered to him. If a dishonest repair shop or service station has meanwhile substituted the defendant's lining, the defendant's use of the word "brake block" has not helped him in the fraud. The use of the name can injure the plaintiff only in so far as it results in mistaken buying by the last buyer who accepts the goods because of their name, and the owner is not such a buyer. To suc-

ceed, the plaintiff was therefore bound to show that repair shops or service stations were deceived, and that it failed to do.

There is no evidence to impute to the defendant the proposals of some of its salesmen that dealers should fraudulently substitute the defendant's linings for the plaintiff's.

Judgment affirmed.