**RADIO CORPORATION OF AMERICA v. DECCA RECORDS, Inc., et al.**

**SAME v. COLUMBIA RECORDING CORPORATION et al.**

District Court, S. D. New York,
May 13, 1943.

Rogers, Hoge & Hills, of New York City (Clifton Cooper, of New York City, James H. Rogers, of Chicago, Ill., Daniel Creato, of Camden, N. J., and Leslie D. Taggart, of New York City, of counsel), for plaintiff Radio Corporation of America.

Milton Diamond, of New York City (Jerome H. Adler and Orville N. Greene, both of New York City, of counsel), for defendants Decca Records, Inc., and Decca Distributing Corporation.

Goldmark, Colin & Kaye, of New York City (Willis H. Taylor, Jr., Max Freund, and John T. Farley, all of New York City, of counsel), for defendants Columbia Recording Corporation and Columbia Phonograph Company, Inc.

Olcott, Havens, Wandless & Stitt, of New York City (Neilson Olcott, of New York City, of counsel), for defendant Times Appliance Co., Inc.

WOOLSEY, District Judge.

The causes against the two Decca defendants, the Columbia defendants, and the Times Appliance Company are hereby dismissed, with a grant to the said defendants of all taxable costs, disbursements and allowances.

I. For convenience in discussing these causes, I shall hereinafter refer to the plaintiff as Victor, and the defendants in the two causes as Decca and Columbia respectively.

The two causes, although not consolidated by order, were tried together on stipulation that unless otherwise specified, all evidence was to be considered as taken in both causes.

II. Victor, Columbia and Decca, among other companies, make some records with red labels in their centres, and the only real question posed for me to decide is whether the use of labels of a red color—and this alone—leads to confusion among retail buyers of records and promotes or tends to promote the passing off of Columbia or Decca records in the place of Victor records when the ultimate consumer purchasing is a normal man who can read and is of reasonable native intelligence.

III. In view of Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A. following Section 723c, it is now a work of supererogation to write a considered opinion on the facts and the law in a non-jury cause or proceeding, for its place will be taken by formal findings of fact and conclusions of law separately numbered and stated.

In this proceeding, therefore, in spite of the long time that was occupied on the trial, I shall only very briefly refer to such facts as I think will explain my decision, and give a statement of my conclusions of law thereon.

IV. As the late Emory Buckner, Esq., a really great trial lawyer, once truly remarked: "There is no such thing as a democracy of facts."

That was a very wise remark, for, in every trial, there emerge some facts which are the master or control facts, about which the disputed facts will inevitably group themselves, as will iron filings about the ends of a magnet—although the disputed facts usually do not form so orderly a pattern as do the filings.

The approach to a decision through the master facts is the only reasonably safe approach to the solution of the facts developed in a cause. As in golf the proper stance and the proper cadence of one's swing tends, without insuring accuracy, to make a stroke accurate, so an habitual good technique of approach to a decision of the facts in a cause, tends to bring about a correct solution of those facts. But as in golf, the terrain may result in having the ball come to rest in unexpectable places. All that a Judge can be sure of is that he follow a good technique.

The master facts in a cause, in the order of their objectivity, are, I venture to say—

1) Admitted facts,

2) Facts conceded by counsel at the trial, and

3) Facts proved by such a preponderance of credible unchallenged evidence as to establish them beyond a peradventure.

V. The master facts in this cause are—

1) The incorporation and, hence, the residence of the parties.

2) The registration of the trademarks involved—with the validity of which I shall later deal.

3) The use of the centre of disc records from time—in effect, for my purposes—immemorial, to carry the label of the record, which always contains the name and at least some of the trademarks of its maker, the composition recorded on it and the name or names of the recording artist or artists.

4) That about one-third of the spectrum, visible to the normal human eye, is occupied by red or reddish color.

5) That the favored colors used in the record industry for labels on the centre of disc records have always been red, blue and black.

6) That the labels or identifying marks on disc records have always been placed at the centre thereof.

7) That the centre of disc records, as always and at present made, is a functional part of such records needed to ensure that the needle of the phonograph will follow the sound grooves properly, and through ingenious devices, produce the sound which is the third,—or, perhaps, it should be called, the fourth—dimension of the record, and the only raison d'etre thereof.

8) That in every circular disc record—looking from the perimeter in towards the centre—we find, concentrically arranged: First, a narrow rim to the record; second, the ring of sound grooves, which occupy an area, large or small, according to the amount of music to be played on the record; third, an annular space without sound grooves varying in width, according to the area occupied by the sound grooves; fourth, indented on a slightly lower plane the label of the record, giving the composition, the name of the recording artist or artists, and, at least in the case of the three companies here involved, the clearly printed name in large type of each company and some of its other trademarks, if any; and, then, fifth, in the exact centre of each record is the spindle hole through which a spindle passes holding the disc in position on the turntable of the phonograph, as will a little later herein be further mentioned.

9) That the label is pressed, by a formerly patented process, into the substance of the disc when the record is pressed, and so in effect constitutes an inherent part of the record.

I have already mentioned above that the centre of the disc record, whereinto—as records are now made—the label is pressed, is a functional part of the record whereby the record is so held in position by a spindle passing through the central spindle hole of the disc, as to make the needle of the phonograph follow the sound grooves and not damage the record.

■ VI. The color of the label is not functional qua color, as has been held

in respect of matches with two colors, one on the head and one on the tip where they are to be struck. Cf. Diamond Match Co. v. Saginaw Match Co., 6 Cir., 142 F. 727, 729, 730.

It seems to me, however, that it cannot properly be contended that a colored round label, affixed to the circular centre of a circular disc record, is the use of color in the form of a design, as it must be to constitute a trademark. Cf. Leschen & Sons Rope Co. v. Broderick & Bascom Rope Co., 201 U.S. 166, 171, 26 S.Ct. 425, 50 L.Ed. 710. The circular shape of this centre is inescapable. All that has happened is that a functional part of the record has been colored, not that a design has been achieved.

■ This renders void the plaintiff's trademarks, for color qua color may not be a trademark.

Whether the registered trademark of the words "Red Seal" is merely a descriptive term, and not a fanciful or arbitrary term, I need not, and do not, decide for reasons hereinafter given, although many of the plaintiff's witnesses used the term "Red Seal" and red label interchangeably, and thus quite unintentionally showed that the words "Red Seal" were really descriptive of and not an arbitrary term for a red label in the centre of a disc record.

■ I do not have to decide this question as to the words "Red Seal" for the trademark of the words "Red Seal" shares, as a trademark, inevitably the fatal infirmities of the color red as a trademark for the reasons involved in the physics of light with which I shall now essay very briefly to deal.

VII. White light, as dispersed into colors by a prism, constitutes the spectrum, and is illustrated by the annexed colored representation thereof.

Apropos of this, several observations should be made, based on evidence of the experts—Professor Hardy, of the Massachusetts Institute of Technology, and Professor Hecht, of Columbia University—called respectively by Victor and Columbia.

These observations are:

First: What color is seen by the normal eye depends on the wave lengths given off by the color in question.

Second: From a macrocosmic viewpoint, the wave lengths of color viewed as light visible to the normal eye occupy a very small band of the whole number of

wave lengths recognized by physics. Cf. Color as Light, Exhibit 426, at page 5.

Third: The visible color spectrum wave lengths are measured in millimicrons, cf. page 5 of Exhibit 426, and extend from 400 to 700 millimicrons inclusive:

From circa 610 to 700 of the said wave lengths the color to the normal eye is of red hue, shading from the deepest red until by gradations of color it gradually turns to orange.

Thus circa one-third of the visible spectrum is of a red or reddish color. From the use of any part of this broad color band on labels of disc records, the plaintiff claims the right—to put it in its mildest form—to file a caveat against all other makers of disc records on the pain of their creating, what the plaintiff is pleased to call, "instruments of fraud", challengeable by appropriate Court proceedings.

To me, under the circumstances shown in this cause, this seems to be an egregiously exaggerated claim.

A trademark for a red centre to a record,—secured, as here, ex parte, or for the phrase "Red Seal", also so secured,—is far too broad a zone of potential exclusion of others, whether it be viewed as a registered trademark, or as a common law trademark, or as a secondary meaning for the words "Red Seal".

I find the words "Red Seal" have achieved a secondary meaning as the product of the plaintiff and its predecessors, But clearly the words "Red Seal" intrinsically are cursed with the same trademark infirmity as is the use of the color red. Its objective is the same, as just noted above, and it is far too broad in its potentialities of exclusion to be countenanced by a Court.

■ So we are faced by an invalid secondary meaning which cannot take the place for remedial purposes of an invalid trademark. Cf. Standard Paint Co. v. Trinidad Asphalt Mfg. Co., 220 U.S. 446, 31 S.Ct. 456, 55 L.Ed. 536.

VIII. If I am right in this holding, we are driven to consider the question in these causes as a question of whether there was naked, unfair competition, cf. Standard Paint Co. v. Rubberoid Roofing Co., 7 Cir., 224 F. 695, 698, whereby the records of Columbia and Decca, under all the circumstances shown in this cause, reasonably could have been confused with, or passed off as records of Victor.

IX. Federal jurisdiction herein was originally based on the fact that the trademarks on which the suit was based were registered under the Trademark Act, 15 U.S.C.A. § 81 et seq.

■ Having held such trademarks were invalid, I am left in the Columbia cause with a controversy as to unfair competition between a corporation of the State of Delaware, the plaintiff, and one defendant corporation, which is also a citizen of Delaware. This lack of diversity of citizenship, under the circumstances, does not foreclose the Federal Court's jurisdiction of the Columbia cause, but leaves me, under the decisions of the Supreme Court, with what I may, perhaps aptly call derivative jurisdiction. See Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 325, 59 S.Ct. 191, 83 L.Ed. 195, and Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148.

X. Herein the plaintiff's contentions are that the red color of the label at the centre of a record lays a foundation for confusion which may be the basis for sustaining a claim of unfair competition on the recognized right not to have an object created whereunder there is a reasonable potentiality that B's goods may be passed off as A's product.

■ I do not find credible proved instances of the creation of such a potentiality or of any passing off, and, in view of the circumstances under which records are sold, no inherent probability of such passing off on any person possessing a full equipment of senses.

The highly artificial evidence of the plaintiff's investigators wholly failed to impress me. Cf. Coca-Cola Co. v. Carlisle Bottling Works, D.C., 43 F.2d 101, 117, 118, affirmed 6 Cir., 43 F.2d 119; New England Confectionery Co. v. National Wafer Co., 1 Cir., 224 F. 344, 347; Rathbone, Sard & Co. v. Champion Steel Range Co., 6 Cir., 189 F. 26, 32, 33, 37 L.R.A.,N.S., 258.

Disc records are commodities which are sui generis. They are not bought, for example, as are biscuits or ale, or beer, or medicines. They are, supposedly, instruments of aesthetic delight. At least, that is the purchaser's—and the seller's—approach to them.

Records are considered purchases. I am satisfied beyond any doubt that before buying a record, between fifty percent and sixty percent of retail purchasers of

records take them, put them on the turntable of a phonograph in the shop and play them before buying them. The rest of the retail purchasers of records order them by name from catalogues of records with which the modern world seems to me to be flooded.

XI. The facts in regard to the spectrum above noticed may explain why it has so wisely become almost a judicial cliche, to say there cannot be a trademark in color, and also why, in spite of the pressing of millions of red centered records, the plaintiff hitherto paid only, what may fairly be called, sporadic attention to them until it began preparation for these causes.

I am almost persuaded that what the plaintiff dislikes is not what it is pleased to call unfair competition, but is any competition whatever.

Indeed, the more I ponder on these causes, the less meritorious the plaintiff's claim appears to me. I will go so far as to state that I carried away from the trial the distinct impression that on the question of confusion and passing off, some of the witnesses employed by the plaintiff seemed to share my lack of belief in the plaintiff's case. E. G. The evidence of Murray, the present general manager of the Record Division of the plaintiff, called by Columbia. They seemed to be satisfied, as I am, that records are not sold by color but for sound.

XII. Instead of turning over the making of the findings of fact and conclusions of law to the defendants Decca and Columbia as the winning parties, and in order to save time, I have followed the short form of such findings and conclusions which will be found approved in Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, at page 321, 59 S.Ct. 191, at page 194, 83 L.Ed. 195, and which I used successfully in American Brake Shoe & Foundry Co. v. Alltex Products Corp., 2 Cir., 117 F.2d 983.

I file these findings and conclusions herewith.

Findings of Fact and Conclusions of Law in Radio Corporation of America v. Decca Records, Inc., et al.

For opinion, see 51 F.Supp. 493.

WOOLSEY, District Judge.

This cause, on the 27th day of April, 1943, came on further to be heard, and was argued by counsel, and thereafter, on due consideration thereof, I made the following findings of fact and conclusions of law therein:[1]

### Findings of Fact

1. The plaintiff is a corporation of Delaware, and both defendants are corporations of New York. The amount involved in the case is far in excess of $3,000, exclusive of interest and costs.

2. The plaintiff is, by proper assignment from its predecessor, the present owner, among others, of the registered trademarks No. 42,962 and No. 43,259, registered under the Act of 1881, 21 Stat. 502, and of the registered trademarks No. 49,364 and No. 54,368, registered under the Act of 1905, 15 U.S.C.A. § 81 et seq.

3. Trademarks No. 42,962 and No. 49,364 involve the use of the color red at the centre of disc records, and No. 43,259 and No. 54,368 involve the words "Red Seal" describing such color so used.

4. It is on these four trademarks of the plaintiff that this suit is founded.

5. The centre of disc records, as at present made, is a functional part of such records needed to hold the record in position to ensure that the needle of the phonograph will follow the sound grooves properly, and, through ingenious devices, produce the sound which is the third, or perhaps it should be called, the fourth dimension—and the only raison d'etre of the record.

6. In every disc record—looking from the perimeter in towards the centre—we find concentrically arranged: first, a narrow rim to the record; second, the ring of sound grooves, which occupy an area, large or small, according to the music to be played; third, an annular space without sound grooves, varying in width, according to the area occupied by the sound grooves; fourth, sunk to a slightly lower plane than the record itself, the label of the record, giving the composition, the name of the recording artist or artists, and, at least in the case of the three companies here involved, the clearly printed name of each

[1] For the form of these findings I am following the findings in Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195, which can be read at pages 321, and 194 of 305 U.S. and 59 S.Ct., respectively; also the findings I used in American Brake Shoe & Foundry Co. v. Alltex Products Corp., 2 Cir., 117 F.2d 983.

company, and some of its other trademarks, if any; and, then, fifth, in the exact centre of each record is the spindle hole.

7. The label is pressed into the substance of the disc when the record is pressed, and constitutes an inherent part of the record.

8. The plaintiff has made out a trade name or secondary meaning, as its product, for the words "Red Seal".

9. The defendants are alleged to have infringed the plaintiff's above mentioned trademarks and trade name by the use of disc records with red centres, and to have been guilty of unfair competition.

10. The question in this claim of unfair competition turns entirely on the pressing and distribution of records with red centre by the defendants.

11. The defendants have not been proved, by evidence credible to me, to have been guilty of any form of unfair competition by imitating the plaintiff's packages, labels or otherwise.

12. In spite of the plaintiff's contention that there was a contract made by the Decca defendants not to use the color "red" as a centre for their records, I find that, although negotiations with that objective were begun, no such contract was actually consummated.

### Conclusions of Law

1. This court has jurisdiction of this cause under Title 28 U.S.C.A. § 41(7), which is confirmatory of Title 15 U.S.C.A. § 97, and has jurisdiction, in so far as the alleged unfair competition is concerned, owing to the fact that there is a diversity of citizenship between the plaintiff and the two defendant corporations here involved, and that the amount in controversy is in excess of the statutory requirements.

2. I find that the red label affixed to the centre of a round disc record is not the use of color in the form of a design, and, consequently, cannot be the subject matter of a trademark.

3. Under the physics of light, the record shows about one-third of the spectrum is of a red hue, in respect of all of which the plaintiff seeks to hang out a caveat sign to prevent any one else from using red labels on the centre of disc records. In other words, it wants to be in a position to claim this broad band of color against other makers of disc records preventing them from the use of red centres. This position is not maintainable.

4. The plaintiff has established a secondary meaning for the words "Red Seal" as indicating that it is the maker of goods so marked or so described.

5. The words "Red Seal" share the same infirmity as the color red, as being far too broad in its implications of exclusiveness. Hence it is void as a trademark, and, as a secondary meaning, cannot be the foundation of a remedy.

6. The defendants are, vis-a-vis the plaintiff, second comers into the field of making disc records in this country, and have carefully differentiated the Decca product from the Victor product by having the trademarked word "Decca" clearly printed on the label of every record which it presses, so that any literate person of reasonable intelligence who looked at the record could not fail to understand that it was not made by the plaintiff.

7. On the issue of unfair competition, I do not find any instance proved by evidence credible to me of any potentiality of confusion or of any actual passing off of Decca products as Victor products.

8. Consequently, there has not been any unfair competition, to which issue we have found ourselves ultimately relegated.

9. The judgment of this Court, therefore, is that the complaint herein be dismissed, and I grant to the defendants all taxable costs, allowances and disbursements.

10. Such a judgment, on the usual notice, may be submitted to me for signature.

Findings of Fact and Conclusions of Law in Radio Corporation of America v. Columbia Recording Corporation et al.

For opinion see 51 F.Supp. 493.

WOOLSEY, District Judge.

This cause, on the 27th day of April, 1943, came on further to be heard, and was argued by counsel, and thereafter on due consideration thereof, I made the following findings of fact and conclusions of law therein:[2]

---

[2] For the form of these findings I am following the findings in Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195, which can be read at pages 321 and 194 of 305 U.S. and 59 S.Ct., respectively; also the

### Findings of Fact.

1. The plaintiff is a corporation of Delaware, and the defendants Columbia Phonograph, Inc. and the Times Appliance Company, Inc. are corporations of New York. The Columbia Recording Corporation is a corporation of Delaware.

2. The plaintiff is, by proper assignment from its predecessors, the present owner, among others, of the registered trademarks No. 42,962 and No. 43,259, registered under the Act of 1881, 21 Stat. 502, and of the registered trademarks No. 49,364 and No. 54,368, registered under the Act of 1905 15 U.S.C.A. § 81 et seq.

3. Trademarks No. 42,962 and No. 49,364 involve the use of the color red at the centre of disc records, and trademarks No. 43,259 and No. 54,368 involve the use of the words "Red Seal" describing such a color so used.

4. It is on these four trademarks of the plaintiff that this suit is founded.

5. The centre of disc records, as at present made, is a functional part of such records needed to hold the record in position to ensure that the needle of the phonograph will follow the sound grooves properly, and, through ingenious devices, produce the sound which is the third, or perhaps it should be called, the fourth dimension—and the only raison d'etre of the record.

6. In every disc record—looking from the perimeter in towards the centre—we find concentrically arranged: first, a narrow rim to the record; second, the ring of sound grooves, which occupy an area, large or small, according to the music to be played; third, an annular space without sound grooves, varying in width, according to the area occupied by the sound grooves; fourth, sunk to a slightly lower plane than the record itself, the label of the record, giving the composition, the name of the recording artist or artists, and, at least in the case of the three companies here involved, the clearly printed name of each company, and some of its other trademarks, if any; and, then, fifth, in the exact centre of each record is the spindle hole.

7. The label is pressed into the substance of the disc when the record is pressed, and constitutes an inherent part of the record.

8. The plaintiff has made out a trade name or secondary meaning, as its product for the words "Red Seal".

9. The defendants are alleged to have infringed the plaintiff's above mentioned trademarks and trade name by the use of disc records with red centres, and to have been guilty of unfair competition.

10. The question in the claim of unfair competition turns entirely on the pressing and distribution of records with red centres by the defendants.

11. The defendants have not been proved, by evidence credible to me, to have been guilty of any form of unfair competition by imitating the plaintiff's packages, labels or otherwise.

### Conclusions of Law

1. This court has jurisdiction of this cause under Title 28 U.S.C.A. § 41(7), which is confirmatory of Title 15 U.S.C.A. § 97, and has derivative jurisdiction, in so far as the alleged unfair competition is concerned, owing to the fact that the alleged unfair competition depends on substantially the same facts as the alleged breach of trademark.[3]

2. I find that the red label affixed to the centre of a round disc record is not the use of color in the form of a design, and, consequently, cannot be the subject matter of a trademark.

3. Under the physics of light, the record shows that one-third of the spectrum is of a red hue, in respect of all of which the plaintiff seeks to hang out a caveat sign to prevent any one else from using red labels on the centre of disc records. In other words, it wants to be in a position to claim this broad band of color against other makers of disc records preventing them from the use of red centres. This position is not maintainable.

4. The plaintiff has established a secondary meaning for the words "Red Seal" as indicating that it is the maker of goods so marked or so described.

5. The words "Red Seal" share the same infirmity as the color red, as being far too broad in its implications of exclusiveness. Hence it is void as a trademark, and, as a secondary meaning, cannot be the foundation of a remedy.

---

findings I used in American Brake Shoe & Foundry Co. v. Alltex Products Corp., 2 Cir., 117 F.2d 983.

[3] Cf. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 325, 59 S.Ct. 191, 83 L.Ed. 195.

6. The defendants have carefully differentiated the Columbia product from the Victor product, by having the word "Columbia", and other of its trademarks, clearly printed on its labels so that any literate person of reasonable intelligence who looked at the record could not fail to understand it was not made by the plaintiff.

7. On the issue of unfair competition, I do not find any instance proved by evidence credible to me of any potentiality of confusion or of any actual passing off of Columbia products as Victor products.

8. Consequently, there has not been any unfair competition, to which issue we have found ourselves ultimately relegated.

9. The judgment of this Court, therefore, is that the complaint herein be dismissed, and I grant to the defendants all taxable costs, allowances and disbursements.

10. Such a judgment may, on the usual notice, be submitted to me for signature.