NATIONAL TRAILWAYS BUS SYSTEM, etc., Plaintiff,

v.

TRAILWAY VAN LINES, INC., etc., Defendant.

NATIONAL TRAILWAYS BUS SYSTEM, etc., Plaintiff,

v.

TRAILWAY STORAGE, INC., etc., Defendant.

Nos. 60–C–1091, 64–C–4.

United States District Court
E. D. New York.

March 25, 1965.

---

6. 45 C.F.R. 80.6(a).

Poles, Tublin & Patestides, New York City, Mason, Mason & Albright, Washington, D. C., for plaintiff, National Trailways Bus System.

Palmer, Masia & Palmer, New York City, by William B. Mason, Washington, D. C., Werner & Alfano, New York City, by Penrose Lucas Albright, Washington, D. C., for defendants.

MISHLER, District Judge.

### PLEADINGS

On November 10, 1960, plaintiff commenced an action against defendant, Trailway Van Lines, Inc. (Van Lines), by filing a complaint containing two claims. The first claim charges a trade-

mark infringement and the second claim charges unfair competition.

The answer [1] denied the material allegations in the complaint and pleaded six affirmative defenses. By order dated January 10, 1964, Judge Rayfiel struck the Fifth and Sixth affirmative defenses (opinion dated October 1, 1963, reported in D.C., 222 F.Supp. 143.) The remaining four affirmative defenses are:

1. Plaintiff's service marks, "Trailways" and "National Trailways Bus System," are null and void because plaintiff was not, and is not, engaged in the passenger motor bus transportation service; that plaintiff's application falsely and fraudulently represented that "it and its member companies are using the same mark" for passenger motor bus transportation service, and that the member companies were subsidiaries.

2. The registration of the mark as a service mark instead of registration as a collective mark, and plaintiff's failure to disclose the true ownership and operation of the buses, rendered the registered mark invalid and created no right of monopoly in plaintiff.

3. Laches.

4. The parties are not in direct competition and, consequently, there is no likelihood of confusion.

On January 2, 1964, plaintiff brought an action against defendant, Trailway Storage, Inc. (Storage). The complaint is similar in form to the action against Van Lines. The answer interposed [1] is similar to that interposed by Van Lines.

The actions were consolidated by Order of this Court dated June 18, 1964. Trial was by the Court without a jury.

### FACTS

Plaintiff is an unincorporated association, consisting of 44 owner-operator bus companies. It was organized in Chicago in 1936 and its present offices are in Washington, D. C., where it employs about 15 persons. The member companies own a total of 2,000 buses and offer motor bus passenger service in most areas of the country. They sell more than 35,000,000 passenger tickets a year. Plaintiff never owned or operated buses or bus facilities; it has no stock or other financial interest in any member company. None of the officers or employees are engaged in the business of passenger bus service.

Each member is a licensee under a certificate of convenience and neccessity issued by the Interstate Commerce Commission (I.C.C.) as a motor bus operator of passenger service. The I.C.C. demarcates the area and nature of services that may be offered.

Schedules are working out on a regional basis by the members affected. Meetings are held annually at plaintiff's offices for the purpose of coordinating the time and routes of the various members with a view to offering the public uninterrupted service from point of origin to destination. Schedules are arranged and other business projects adopted by agreement of the particular members affected. The Articles of Association do not obligate any member to assume performance of any service, schedule or route.[2] They do obligate members to "Adopt and maintain and use any color schemes or color patterns or trade marks or emblems or slogans recommended for adoption * * *," [3] and to pay dues (which are based on gross income from passenger revenue determined from reports submitted by members). The member companies paint the word Trailways in large red letters on all their buses. Plaintiff does not supervise the manner or method of the use of the mark

---

1. As amended by pre-trial order dated October 8, 1964.

2. The Articles of Association Revised March 15, 1950 and retained in the Articles Revised March 1958 state: Board of Directors—Section 5. Neither the Board of Directors nor the officers and members of the Association shall have authority to manage, control or in any way interfere with the business operations or affairs of any member company. * * *

3. Articles of Association—Article X(c)

Trailways. Plaintiff publishes brochures which describe the services available to the public for general distribution under the mark National Trailways Bus System. Schedules printed by the members are similarly under the mark National Trailways Bus System.

Plaintiff offers benefits of volume buying to its members. It serves as means of communication of trade information. It seeks to induce uniformity in equipment and appearance so that the members might attain a competitive advantage. In 1952, it organized Trailways Travel Bureau Corporation as a wholly-owned subsidiary. This travel service was organized to promote bus travel for the benefit of the member companies.

Committees are organized by area or region to carry out the objectives and purposes of the Association, i. e., Safety Committees and Committees on Traffic and Advertising. These committees are composed of personnel of the members affected or interested and are under the control of such members. Plaintiff in no way supervises or controls such committees.

The plaintiff exercises no legitimate control over use of the marks referred to, or of the quality of the services rendered by the companies. The member companies are in no sense subsidiaries of plaintiff.[4] This has remained true since the plaintiff association was organized.[5]

## VALIDITY OF REGISTRATIONS

On October 23, 1947, plaintiff filed two applications (dated June 30, 1947) in the United States Patent Office for trademark registration as service marks under

Title 15 of the U. S. Code—one for National Trailways Bus System (App. #538061) and one for Trailways (App. #538062). Each application recited that plaintiff, "composed of a number of member companies, has adopted and is using the service mark shown in the accompanying drawing for passenger motor bus travel service * * * [and that it is] being displayed in various sizes on all buses operated by it or its member companies." (Defs. Ex. A & Ex. B). The examiner then requested an explanation of " * * * the use of the claimed mark by 'member companies'." The response by Mason and Mason, attorneys for the applicant, stated that the "member companies" were "merely subsidiaries" of plaintiff.[6]

New statements dated May 21, 1949, filed May 25, 1949 in the U. S. Patent Office (p. 17 Ex. A; p. 19 Ex. B) represented that the service mark was " * * * being displayed on all buses operated by it or its member companies."

Service marks Trailways (November 9, 1949), Reg. No. 517,542, and National Trailways Bus System (January 10, 1950), Reg. No. 519,783, were registered in favor of plaintiff on the principal registry of the U. S. Patent Office.

Affidavits dated August 2, 1955 and filed August 9, 1955, under Sections 8 and 15 (15 U.S.C. §§ 1058 and 1065) repeated the representations (Ex. A - p. 21; Ex. B. – p. 25).

The attack on the validity of the marks is that they were obtained by " * * * false and fraudulent representations with respect to the alleged use of the said marks by the plaintiff in the passenger motor bus transportation service and

---

4. Mr. Jessup, chairman of plaintiff's Board of Directors and a director for 15 years, stated:
   " * * * We are not subsidiaries as you would term a subsidiary, from a financial point of view. * * *" (Trans. p. 112, ll. 12–14).

5. Plaintiff did not offer Articles of Association in effect prior to March 15, 1950.

6. The response made in part (p. 112 Ex. A & p. 9 Ex. B) stated:

"The instant organization which does business in Chicago, Illinois [at that time plaintiff's place of business] is made up of many member companies which do business throughout different parts of the United States. Both the instant organization and all the member companies use this mark and the member companies are merely subsidiaries of the Chicago organization."

that the member companies were mere subsidiaries of plaintiff" (defs. brief filed 2/1/65 p. 7–8).

Plaintiff's answer is that it arranges tours, sells tickets and promotes transportation service under the mark "Trailways," and it is operating in "an important segment of the transportation service." Further, it argues that it establishes safety standards and arranges schedules, thus manifesting "control over member companies."

The record is barren of proof that at the time applications were made and during the pendency of the applications, plaintiff advertised the services of the member companies. The proof is that monies were spent by the plaintiff for advertising in national magazines and other national publications in 1950 and thereafter. The Court infers that advertising of the marks was carried on solely by the member companies prior to 1950.

## MATERIALITY OF MISREPRESENTATIONS

Section 3 of the Lanham Act (15 U.S.C. § 1053) made service marks registrable " * * * in the same manner and with the same effect as are trade marks * * * except when used so as to represent falsely that the owner thereof makes or sells the goods on which such mark is used."

Plaintiff's registered marks were used to advertise passenger motor bus service. It identified the service offered by the members of the association. Assuming plaintiff did render service in promoting and advertising the services of the member companies, such services were only incidental to the sale of motor bus passenger service. Section 45 of the Lanham Act (15 U.S.C. § 1127) defines a service mark as follows:

Service mark. "The term 'service mark' means a mark used in the sale or advertising of services to identify the services of one person and distinguish them from the services of others. * * * "

■ Such services are not registrable as service marks for motor bus passenger service. 4 Callmann, Unfair Competition and Trade-Marks 2128 (2d Ed.) ; 1 Seidel-Dubroff-Gonda, Trademark Law and Practice, § 11.04; Ex parte Minneapolis Aquatennial Ass'n, 1955, 104 U.S.P.Q. 152.

Since only members of plaintiff association use the marks, such marks appear to fall within the classification defined by Section 45 of the Lanham Act as collective marks. That section states in part:

"The term 'collective mark' means a trademark or service mark used by the members of a cooperative, an association or other collective group or organization * * *."

■ A collective mark indicates membership in a group. If the association which owns the mark produces goods, it may not be affixed to the goods. Huber Baking Co. v. Stroehmann Bros. Co., 1958, 2d Cir., 252 F.2d 945, 952, cert. denied 1958, 358 U.S. 829, 79 S.Ct. 50, 3 L.Ed.2d 69. Similarly, a service mark identifies the producer or seller of services just as a trade mark identifies the producer or seller of goods. Springfield Fire and Marine Ins. Co. v. Founders Fire & Marine Ins. Co., 1953, N.D.Cal., 115 F.Supp. 787.

■ Plaintiff falsely represented its participation in motor bus passenger service, and its relationship to its members. The misrepresentation was material. No purpose is served by speculating as to why plaintiff did not seek registration of the marks as collective marks, or whether the U. S. Patent Office would have granted such registration. It is apparent that registration of the marks as service marks would not have been granted by the U. S. Patent Office if the true facts were disclosed. Plaintiff's argument of incontestability under Section 33 of the Lanham Act (15 U.S.C. § 1115) falls by express exception under subdivision (1) (where right is obtained fraudulently).

Plaintiff's argument that the use of the marks by member companies is the use of the mark by it—citing Section 5

of the Lanham Act (15 U.S.C. § 1055)[7]— must be rejected. Plaintiff does not control the nature and quality of the services offered by member companies " * * * in connection with which the mark is used." (§ 45 of the Act, 15 U.S.C. § 1127). Denison Mattress Factory v. Spring-Air Co., 1962, 5th Cir., 308 F.2d 403, 409, Dawn Donut Co. v. Hart's Food Stores, Inc., 1959, 2d Cir., 267 F.2d 358, 367.

Plaintiff's first claim is dismissed and the registrations herein referred to will be cancelled by appropriate directions to the Commissioner in the judgment to be entered. (Lanham Act § 37, 15 U.S.C. § 1119). Plaintiff is thus denied the procedural advantages available a registrant under the Act. Best & Co. v. Miller, 1948, 2d Cir., 167 F.2d 374, 376, cert. denied, 1948, 335 U.S. 818, 69 S.Ct. 39, 93 L.Ed. 373. Plaintiff's failure to establish a statutory right, however, does not affect its common law claim of unfair competition. Avon Shoe Co. v. David Crystal, Inc., 1960, 2d Cir., 279 F.2d 607, 614, cert. denied, 1960, 364 U.S. 909, 81 S.Ct. 271, 5 L.Ed.2d 224; Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., 1960, 2d Cir., 281 F.2d 755, 762; House of Westmore, Inc. v. Denney, 1945, 3d Cir., 151 F.2d 261.

## CLAIM OF UNFAIR COMPETITION

Plaintiff and its member companies spend a total of approximately $2,000,000.00 on national and local advertising (of this, approximately $500,000.00 is spent by plaintiff).

Prior to 1950, substantial monies were spent by the member companies. All the advertising identified the marks Trailways and National Trailways Bus System with the services rendered by the member companies. It has found public acceptance.

The mark Trailways is a combination of two common words. It is not a coined or fanciful word like "Kodak." Ex parte Gatter, 1953, 96 U.S.P.Q. 216. Combinations such as Trailways have been described as weak marks. France Milling Co., Inc. v. Washburn-Crosby Co., 1925, 2d Cir., 7 F.2d 304, cert. denied, 1925, 268 U.S. 706, 45 S.Ct. 640, 69 L.Ed. 706 (Gold Medal); Allstate Ins. Co. v. Allstate Inv. Corp., 1962, W.D.La., 210 F.Supp. 25, aff'd, 1964, 5th Cir., 328 F.2d 608. Nevertheless, because of a long and extensive advertising program in which both plaintiff and its members participated, the word Trailways is identified in the public mind with the passenger bus service offered by plaintiff's members and has acquired a secondary meaning. American Brake Shoe and Foundry Co. v. Alltex Prods. Corp., 1941, 2d Cir., 117 F.2d 983, cert. denied, 1941, 314 U.S. 631, 62 S.Ct. 63, 86 L.Ed. 507.

The mark Trailways represents a substantial part of plaintiff's good will. Without the mark, plaintiff's good will is valueless. Plaintiff claims that the use of the word Trailway in the corporate names of defendants, and the use of the word Trailway in their businesses, is an appropriation of plaintiff's property right in its good will, and, further, that such use is likely to confuse the public. Norwich Pharmacal Co. v. Sterling Drug, Inc., 1959, 2d Cir., 271 F.2d 569, cert. denied, 1960, 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739. Defendants deny likelihood of confusion since they are not in direct competition with plaintiff; they further claim that the word Trailway originated independently of plaintiff's use.

The Court finds that defendants' original use of the name was with knowledge of the use by plaintiff of the word Trailways. By 1950, the year of incorporation of Van Lines, some 2500 Trailways buses were operating throughout the

---

7. Section 5 provides:
   "Where a registered mark or a mark sought to be registered is or may be used legitimately by related companies, such use shall inure to the benefit of the registrant or applicant for registration, and such use shall not affect the validity of such mark or of its registration, provided such mark is not used to deceive the public."

country. Plaintiff, at that time, spent approximately $600,000.00 for the year in national advertising. Additional monies were spent by member companies throughout the country. About $25,000.00–$30,000.00 was spent in New York City by the interested member companies (Trans. p. 42). Versions as to the origin of the defendants'· corporate: names offered by Gabriel J. Fazio, officer and principal stockholder in both defendant corporations, are rejected. (Trans. p. 459–461).

■ Defendants used the word Trailway in their corporate names to take advantage of plaintiff's extensive advertising and publicity efforts to popularize passenger travel by bus. This constituted an appropriation of plaintiff's mark and of its good will. Defendants argue that they are not in competition with plaintiff and, therefore, plaintiff can suffer no damage by defendants' use of the name. Even against an *innocent junior user*, an owner of a mark has the right to enjoin use of the mark in related fields (a) if the senior user may at some future date desire to expand his business into the related field or (b) to keep it " * * * free from the stain and tarnishment which may result from ; improper trade practices of the junior user." Avon Shoe Co. v. David Crystal, Inc., supra, 279 F.2d at 613.

Defendants here argue that I.C.C. regulations limit the business activities of member companies to motor bus passenger service, and that expansion into other business areas is thus prohibited; they point to the high quality of their service in answer to the argument of possible injury to plaintiff's reputation. Plaintiff may nevertheless expand into defendants' field by admitting competitors of defendants into the association,[8] or through acquisition by member companies of a competitive business. In answer to defendants' second point, the Court recognizes that a possible change in defendants' management may result in trade practices which might reflect

unfavorably on plaintiff's mark. Avon Shoe Co. v. David Crystal, Inc., supra at 614; 3 Callmann, Unfair Competition and Trademarks 1364 (2d ed.).

■ A valid mark is afforded limited protection against goods or services not in competition with those associated with the mark. Plaintiff's right is based on a determination that defendants' business is related to plaintiff's or its members. Polaroid Corp. v. Polarad Electronics Corp., 1961, 2d Cir., 287 F.2d 492, 495, cert. denied, 1961, 368 U.S. 820, · 82 S.Ct. 36, 7 L.Ed.2d 25; but see General Motors Corp. v. Cadillac Marine & Boat Co., 1964, W.D.Mich., 226 F.Supp. 716. The relationship is based on similarity of method of performing the services and the identity of a portion of the market, i. e., movement of army personnel and their household goods. The limitations imposed by the I.C.C. do not change the relationship. The services are "substantially of the same descriptive properties." S. C. Johnson & Son, Inc. v. Johnson, 1949, 2d Cir., 175 F.2d 176, 179 (L. Hand, C. J.), cert. denied, 1949, 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527.

In publicizing the corporate names, defendants used more prominent lettering for the word "Trailway" than for the remainder of the names. (trucks—Exs. 6, 8, 9 & 16; terminals—Exs. 7 & 24; business cards—Exs. 10 & 28; carton—Ex. 12; folder—Ex. 11; post card—Ex. EE). Defendants colored the word Trailway red. Plaintiff colored Trailways in red or crimson [Ex. 17 (depot), Exs. 18 & 19 (buses)]. The presentation of the name Trailway to the public is significant in showing a conscious effort to imitate plaintiff's mark. It bears on the issue of the likelihood of confusion. In Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., supra, 281 F.2d at 759, the Court said:

" * * * multiplicity of the similarities is objective evidence of defendant's conscious imitations of plaintiff's product."

---

8. This may require a change in plaintiff's Articles of Association.

Such an intent to deceive raises a presumption that customers will be deceived. Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., supra (see cases cited in footnote 9 and references to My-T Fine Corp. v. Samuels, 1934, 2d Cir., 69 F.2d 76).

Various factors and guides are employed to determine likelihood of confusion. Judge Friendly, in Polaroid Corp. v. Polarad Electronics Corp., supra, suggested, 287 F.2d at p. 495:

" * * * the strength of the mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers."

Evidence of instances of actual confusion were offered (Ex. 27—deposition of Vito Francis Silecchia pp. 11–12, Ex. EE Trans. p. 695, ll. 1–16; p. 698, l. 12; p. 699, l. 3). The courts recognize the difficulty in providing proof of actual instances of confusion. Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., supra at 761. In David Sherman Corp. v. Heublein, Inc., 1965, 8th Cir., 340 F. 2d 377, 380, appellee claimed likelihood of confusion between the mark of Smirnoff Vodka with appellant's Sarnoff Vodka. For about six years, the competitive items were sold in the St. Louis area side-by-side. Appellant employed teams of investigators to seek proof of actual confusion. Though not a single instance of actual confusion was shown, the Court held likelihood of confusion existed.

The Court finds likelihood of confusion from the instances of actual confusion proved and the intent of defendants to imitate plaintiff's mark.

Defendants seek to avoid injunctive relief by invoking the claim of laches, citing Chandon Champagne Corp. v. San Marino Wine Corp., 1964, 2d Cir., 335 F.2d 531 and Polaroid Corp. v. Polarad Electronics Corp., supra. The Court finds the cases cited are inapposite. The

first notice plaintiff had of the unlawful appropriation of the mark was in December 1959. The Court does not infer from the listing, inserted in the local telephone directory in the Counties of Queens and Suffolk, that plaintiff, or a member company, had notice of defendants' use of the mark prior to 1959. Plaintiff, after receiving knowledge of defendants' misuse of its mark, proceeded without delay in the prosecution of its rights.

Findings of fact and conclusions of law have this day been made. The first claim is dismissed, the Commissioner is directed to cancel the registrations; judgment is directed on the second claim in favor of plaintiff and against defendants for the relief requested in the complaint.

Settle judgment on five (5) days notice. On settlement the Court will hear argument on applications for stay of execution and appropriate provision for damages and accounting therefor.