**FRAM CORPORATION, Appellant,**
v.
**W. E. BOYD, d/b/a Web Filter Company, Appellee.**
No. 15590.

United States Court of Appeals
Fifth Circuit.
March 16, 1956.

John A. Erhard, A. Philip Wilson, Jr., Dallas, Tex., S. Everett Wilkins, Jr., Gen. Counsel, Fram Corp., Providence, R. I., for appellant.

Chas. F. Potter, Tyler, Tex., Spruiell, Lowry, Potter & Lasater, Tyler, Tex., for appellee.

Before BORAH, TUTTLE and JONES, Circuit Judges.

BORAH, Circuit Judge.

The appellant, Fram Corporation, brought suit in the District Court to perpetually enjoin W. E. Boyd, doing business as Web Filter Company: (1) from infringement of plaintiff's regis-

tered trade-mark "Fram",[1] (2) from infringement of plaintiff's alleged common-law trade-mark, and (3) from engaging in unfair competition; and prayed for an accounting of profits and for damages. Answer was filed, and after a hearing at which evidence was taken, the judge below made full, complete and explicit findings of fact and handed down a written opinion holding that Boyd by marketing his oil filter replacement cartridges in a white carton labeled "Fram C-4 Cartridge" had infringed upon plaintiff's registered trade-mark, and awarded treble damages[2] in the amount of $390. However, injunctive relief by reason of said infringement was denied, and it was ordered and decreed that plaintiff take nothing against defendant by way of money damages or injunctive relief in connection with all other claims of infringement and unfair competition.

Upon this appeal we are concerned only with the trial court's refusal to perpetually enjoin future infringement of the trade-mark "Fram" and its denial of the claims based upon common-law trade-mark infringement and unfair competition.

Briefly stated the material facts are these: Appellant had manufactured oil filter replacement cartridges for more than twelve years prior to institution of this suit and during the period 1940 to 1953 it expended in excess of $2,000,000 advertising its product in magazines and trade journals and on radio, television and other media. In its advertising appellant emphasized principally its

trade-mark "Fram", but not its carton design. In the year 1949, appellee began marketing filter cartridges which he manufactured first under the trade name of Web Filter Company, and later in 1953 under the name of Par Filter Company. Both of the parties at the time suit was filed were producing and marketing in interstate commerce replacement cartridges of identical sizes and shapes with almost identical perforated exterior surface.[3] Appellant denominated its five sizes of replacement cartridges "Fram C-4 Cartridge", "C-21", "C-100", "C-130" and "C-134"; whereas appellee adopting arabic numerals identical to those employed by Fram, but using a different letter of the alphabet, similarly designated his Web and Par cartridges as "Web B-4", "B-21", etc. and "Par D-4", "D-21", etc. For a number of years appellant marketed its cartridges in orange and black cartons, and appellee when he first began to market his product employed a white carton with yellow labels. During this initial period of appellee's operations, he sold 1,372 cartridges in white cartons on which were printed the words "Fram C-4 Cartridge." However, appellee later abandoned the white carton and at the time suit was filed, both of the parties were marketing their products in black and orange cartons of identical size and of similar color and design.[4]

After this suit was filed, each of the parties adopted cartons of new and different design, color and construction, which they thereafter employed to mar-

---

1. Trade-mark No. 337799 registered in U. S. Patent Office on August 18, 1936.

2. 15 U.S.C.A. § 1117.

3. Fram C-4, Web B-4 and Par D-4 cartridges were metal cylinders measuring 4 and 14/16 inches in height, 4 and ¼ inches in diameter, with an 11/16 inch core. The exterior of the Fram cartridge bore 108 perforations spaced 3/4 inches apart beginning ½ inch from the top and bottom of the cylinder in 6 rows containing 18 perforations. The exterior of the Web and Par cartridges contained 126 perforations spaced 10/16 to 3/4

inches apart and were in 7 rows containing 18 perforations.

4. The cartons for Fram C-4 cartridges and appellee's cartridges of the same size measured 4½x4½x5 inches and bore black lettering on almost identical orange background. Fram's carton had a 1-3/4 inch black band around the bottom of the carton bearing orange lettering, whereas appellee's carton had a similar but only 1 inch black band with orange lettering. The cartons for other cartridge sizes were proportionately larger, but identical in color and design to the cartons described herein.

ket their respective products.[5] Fram, however—has continued to use some of its old cartons which it had on hand.

Without setting out the testimony in detail, it is sufficient for us to say that the record supports the trial court's findings that appellee changed his carton design in a good faith effort to avoid further controversy with appellant, and that there was no evidence to show the occurrence of any actual confusion of appellee's replacement cartridges with those manufactured and sold by appellant or that such confusion was probable. It is also plain that no serious advertising attempt was ever made to "sell" appellant's carton, its color or design, to the public. There was, however, strong evidence to show that the so-called general public or consumer rarely selected the filter replacements and that car service and repair men constitute the actual purchasers of the cartridges. As to them, there was no evidence that these "experts" who are experienced in ordering and handling automobile parts and supplies had been or were likely by reason of carton design or color to be misled or to purchase appellee's product when they desired that manufactured by appellant.

■■■ This record and a careful study of the applicable law convinces us that the findings of fact made by the judge below were correct and were based upon substantial evidence, and that proper conclusions as to the application of the law to the facts were reached. Since there was no evidence in the record which cast any doubt upon appellee's good faith abandonment of the practices which constituted an infringement of appellant's registered trade-mark and none to indicate a probability that such acts would be resumed, the injunction was rightly denied, for the reason that past acts and practices furnish no basis for injunctive relief when, as here, they have been effectively discontinued. In-

dustrial Ass'n of San Francisco v. United States, 268 U.S. 64, 84, 45 S.Ct. 403, 69 L.Ed. 849. Cf. 28 Am.Jurisprudence 201.

■■■ Likewise, and with respect to the alleged unfair competition, there was insufficient evidence to establish that appellee's product was marketed in such a manner that the public in general using ordinary care would be mistaken in selecting one of appellee's cartridges when intending to select one manufactured by appellant. To the contrary, it was conclusively shown that the major purchasers of the cartridges were "experts". See Pyle National Co. v. Oliver Electric Mfg. Co., 8 Cir., 281 F. 632, 634. Here, appellant failed also to show actual or probable deception, and the existence of a mere possibility of deception does not in and of itself constitute a basis on which to sustain a charge of unfair competition. "In the absence of proof of any confusion or of at least probable injury to the plaintiff's business, the law is too well settled to require further discussion that no relief may be granted on the ground of unfair competition." El Chico, Inc. v. El Chico Cafe, 5 Cir., 214 F.2d 721, 725, and the numerous cases cited therein.

■■■ Finally, and as to the claim of infringement of common-law trade-mark, we think it is plain that colors or a combination of colors of themselves are not subject to trade-mark monopoly, Life Savers Corp. v. Curtiss Candy Co., 7 Cir., 182 F.2d 4, Campbell Soup Co. v. Armour & Co., 3 Cir., 175 F.2d 795, and James Heddon's Sons v. Millsite Steel & Wire Works, Inc., 6 Cir., 128 F.2d 6. Neither are numerals or symbols when used to designate size or capacity, Dennison Mfg. Co. v. Scharf Tag, Label & Box Co., 6 Cir., 135 F. 625.

Accordingly, the judgment of the District Court is

Affirmed.

5. Appellant's new cartons were predominately orange with white lettering, without a border, and the word "Fram" appeared in large white letters. Appellee's new cartons were orange, lettered in black, bearing a black or a white spider-web design with the word "Web" in prominent black letters on the Web cartons, and the word "Par" without spider-web design, on the Par cartons.