WILLIAM A. CATON & others *vs.* WALTER P. REUTHER & others.

Suffolk. October 7, 1960. — December 8, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Labor. Equity Pleading and Practice,* Labor case, Injunction, Parties, Service of process, Class suit, Plea. *Equity Jurisdiction,* To reach and apply. *Jurisdiction,* Over the person, Nonresident, Labor union, Quasi in rem. *Unincorporated Association.*

A suit in equity by members of a local labor union, seeking relief against defendants alleged to have been officers of and "engaged in the business activities of" the international union which chartered the local union and to have been "entrusted with certain duties . . . as they relate to dealings and activities of" the local union and asserting property claims against the defendants and breaches by them of alleged contractual or fiduciary obligations toward the plaintiffs respecting severance pay from an employer for whom the plaintiffs had ceased working and against whom they had no outstanding demands, involved no controversy arising out of a "labor dispute" as defined in G. L. c. 149, § 20C, as amended through St. 1950, c. 452, §§ 1, 2, so that c. 214, § 9A, had no application to the suit. [551–552]

There was no jurisdiction to enter a decree directly against the defendants as individuals in personam in a suit in equity in Massachusetts against nonresident officers of an international union where it appeared that

the defendants were not served with process here, although they were served with an order of notice under Rule 14 of the Superior Court (1954), as amended, outside Massachusetts. [552–553]

In a suit in equity in Massachusetts, personal service here on an "international representative and sub-regional director and administrator" of an international labor union, an unincorporated association, did not give jurisdiction to enter a decree in personam against him which would also bind the membership of the union where the scope of his duties and authority did not appear so that he was not shown to be fairly representative of the membership. [553]

Where it appeared in a suit in equity in Massachusetts that there were assets here of an international labor union, an unincorporated association, and that an order of notice was issued under Rule 14 of the Superior Court (1954), as amended, and duly served outside Massachusetts on at least the president of the union, there was shown substituted service on an officer of the union whose standing ensured that notice to him gave sufficient notice to the membership of the union to satisfy principles of due process and there was jurisdiction quasi in rem to apply the Massachusetts assets to the satisfaction of any indebtedness of the membership to the plaintiffs. [554]

BILL IN EQUITY, filed in the Superior Court on February 12, 1959.

Pleas and demurrers were heard and sustained by *Donahue, J.* The plaintiffs appealed from interlocutory decrees accordingly and from a final decree dismissing the bill.

*Arnold E. Kahn,* (*Charles B. Garabedian* with him,) for the plaintiffs.

*Harold B. Roitman,* for the defendants.

CUTTER, J. This is a bill in equity brought by the plaintiffs "for themselves and on behalf of all other members of . . . Ford Local Union #901 — UAW–CIO" (Local 901), an unincorporated association. Local 901 is alleged to have had as members about 1,100 workmen employed by Ford Motor Company (Ford) at its Somerville plant, and to have been chartered by the International Union, United Automobile, Aircraft and Agricultural Implement Workers of America—UAW–CIO (the International Union), also a voluntary unincorporated association. The International Union is alleged to be "the sole and exclusive bargaining representative for all of the members of the parent or local unions as chartered by it."

The defendants Reuther, Bannon, Kerrigan, Walkinshaw, and DeNardo (hereinafter, except Walkinshaw, for convenience called the "Reuther group") are alleged to have been "engaged in the business activities of the International Union" and to have been "entrusted with certain duties . . . as they relate to dealings and activities of" Local 901. By amendments the president and the treasurer of Local 901 were added as defendants, the latter as having had funds of the International Union in his possession, and the members of the Reuther group were named somewhat more specifically than in the original bill, as defendants "individually and as" occupying stated positions in the International Union. By amendments also (1) three banks were added as parties defendant on the ground that they respectively were depositaries of "funds owned and belonging to" Local 901 and the International Union and (2) Ford was added as a defendant on the ground that it held funds of the International Union under union check-off arrangements. By agreement, an order was entered restraining Ford from disposing of any "funds . . . in Massachusetts . . . held by it for . . . [the] International Union" pending the final determination of the suit.

The bill is confused and complicated. Whether it is multifarious as the defendants suggest (see *Raynes* v. *Sharp,* 238 Mass. 20, 25; *Laverty* v. *Associated Gas & Elec. Sec. Co. Inc.* 300 Mass. 79, 82; *Defiance Printed Circuit Corp.* v. *Goodwin,* 337 Mass. 473, 476) is a matter not before us now when only jurisdictional matters are presented and when we have no occasion to consider whether the allegations state substantive grounds for equitable relief. The bill asserts (1) that on, before, and after March 14, 1958, there existed an agreement made June 8, 1955, expiring June 1, 1958, between the International Union and Ford "to which agreement the plaintiffs also became parties because of their membership in the International Union and Local 901"; (2) that the plaintiffs prior to April 7, 1957, discussed with the defendants and other representatives of the International Union "the question of severance pay for the

plaintiffs in the event of a shut down of the Ford . . . Somerville plant, where [the] plaintiffs were employed"; (3) that the defendants and other representatives of the International Union agreed that this "matter of severance pay would be of prime concern if and when there was a renegotiation of the 1955 agreement" and "that the International Union would not execute an agreement with . . . Ford . . . until . . . Ford . . . agreed to . . . include in any new agreement" such severance pay in the event Ford shut down its Somerville plant; (4) that these arrangements were renewed in March, 1958; (5) that Ford about March 14, 1958, did shut down its Somerville plant and the plaintiffs were dismissed and became unemployed; (6) that in April, 1958, the defendants wrongfully arranged to have the International Union take over supervision of Local 901 and assume possession of its assets, for which the defendants have not made an accounting; and (7) that the defendants, in disregard of their promises, on September 20, 1958, entered into a contract with Ford for severance pay for employees other than the plaintiffs, excluding the latter, and obtained ratification of this agreement "by connivance and collusion" without proper notice to the plaintiffs, so that the plaintiffs did not become entitled to severance pay. The bill sought (a) temporary and permanent injunctive relief against transfer of assets of Local 901, (b) discovery of records and accounts, (c) damages, (d) an accounting of the assets of Local 901, and (e) application of the assets of the International Union to the satisfaction "of any judgment . . . against the defendants."

The members of the Reuther group were not inhabitants of Massachusetts and were not served here. Accordingly, an order of notice under Rule 14, as amended September 12, 1958, of the Superior Court (1954) was issued to each of them on June 25, 1959. Each of these orders of notice was served outside Massachusetts. Walkinshaw, an inhabitant of Massachusetts described as "an international representative and sub-regional director and administrator of the Internation [*sic*] Union," was served in Massachusetts

and filed an answer. The members of the Reuther group appeared specially and they (and perhaps also Walkinshaw, although the record is not clear as to this) filed a plea in abatement alleging want of personal service on the Reuther group. This plea in abatement was sustained on February 3, 1960, as was also a "plea to the jurisdiction to [sic] the court," filed in behalf of the Reuther group and Walkinshaw, and two other defendants, alleging want of personal service in Massachusetts on the members of the Reuther group or any other "individuals who adequately represent the International Union." The "plea to the jurisdiction" also set up (1) that the plaintiffs had failed to exhaust remedies provided under the constitution of the International Union, (2) that the court was asked by the bill to exercise jurisdiction "specifically reserved to the . . . United States under . . . the Labor Management Relations Act" (29 U. S. C. [1952] § 141 et seq.), and (3) that the bill fails to meet the jurisdictional requirements of G. L. c. 214 (incorrectly referred to in the record as c. 215), § 9A (as amended by St. 1950, c. 452, § 3), "concerning the issuance of injunctions in labor disputes." Two documents entitled "demurrer to the jurisdiction" were based upon the absence of indispensable parties, the provisions of the Labor Management Relations Act, and G. L. c. 214, § 9A. The plaintiffs have appealed from interlocutory decrees sustaining the pleas in abatement and to the jurisdiction and the demurrers and also from a final decree dismissing the bill.

1. General Laws c. 214, § 9A, provides no basis for sustaining the pleas and the demurrers. That section has application only where there is a "labor dispute" under G. L. c. 149, § 20C (as amended through St. 1950, c. 452, §§ 1, 2). Despite the breadth of the term "labor dispute" after the 1950 amendment (see *Poirier* v. *Superior Court,* 337 Mass. 522, 525–527), the present proceeding is not a controversy arising out of "any demand of any character . . . concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating . . . terms or conditions of employment, regardless of whether

the disputants stand in proximate relation of employer and employee.'' The plaintiffs have ceased to be employees of Ford and have no outstanding demand against Ford. The allegations do not show that the current controversy is related to any present employer-employee relationship. What appears to be asserted are somewhat ambiguous, ordinary contract, fiduciary, or property claims, even though they have some connection with past labor controversies. See *Wojcik* v. *Ming*, 18 Misc. 2d (N. Y.) 844, 846, construing the similar language of § 2 (9) of the Labor Management Relations Act of 1947, 61 Stat. 136, 138, 29 U. S. C. (1958) § 152 (9). Cf. *DiLeo* v. *Daneault*, 329 Mass. 590, 597.

2. The bill seeks relief against the Reuther group not only by way of an accounting and discovery but also for past breaches of either (a) an alleged contract or (b) a fiduciary obligation to negotiate in a nondiscriminatory manner for all those whom the group represents. Upon the unduly general allegations of the bill we are not now in a position to rule, in advance of a hearing on the merits, whether the bill presents only matters committed exclusively to Federal agencies and courts by congressional enactments affecting labor relations. See *Karcz* v. *Luther Mfg. Co.* 338 Mass. 313, 317; *Courtney* v. *Charles Dowd Box Co. Inc.*, ante, 337, 338–339. For reasons stated in the *Courtney* case, we would be reluctant to hold that State courts cannot pass upon controversies of this character before decisions of the Supreme Court of the United States have more completely defined the extent to which the Labor Management Relations Act of 1947, 29 U. S. C. (1958) § 141 et seq., and the Labor-Management Reporting and Disclosure Act of 1959, 29 U. S. C. §§ 401–531, esp. § 501 (1959 Supp.), 73 Stat. 519, 532–537, have precluded State courts from taking jurisdiction of such controversies. See *San Diego Bldg. Trades Council* v. *Garmon*, 359 U. S. 236, 241–247, and concurring opinion at pp. 250–254.

3. So far as the bill seeks relief directly against members of the Reuther group as individuals (and not merely to bind them as members of the International Union by a

class suit against representative members), no jurisdiction of them has been obtained by service of process upon them within Massachusetts. No decree in personam can be entered against them as individuals. See *Rosenthal* v. *Maletz*, 322 Mass. 586, 590; *Feeney* v. *Feeney*, 335 Mass. 534, 539.

4. The only defendant alleged to hold any official position in the International Union who has been served personally in Massachusetts is Walkinshaw. The scope of Walkinshaw's duties and authority, as an "international representative and sub-regional director and administrator," is not alleged in the bill, nor does the bill have attached the constitution of the International Union, as did the bill considered in *Donahue* v. *Kenney*, 327 Mass. 409, 413. We are left to surmise in determining whether he had adequate powers, and was sufficiently under the direction of the governing bodies and principal officers of the International Union, to be fairly representative of its membership. Although we fully adhere to the holding in the *Donahue* case (327 Mass. 409, 412–417), the present record does not show that jurisdiction has been established here to enter a decree in personam against Walkinshaw which will also be binding upon the members of the International Union because he is fairly representative of the class composed of all the members. See *Durkin* v. *Rieve,* 10 F. R. D. 71, 73 (D. Pa. — service on a regional director held insufficient, in the absence of "any description . . . of what . . . [his] capacity" was). See also *Morgan Drive Away, Inc.* v. *International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.* 166 F. Supp. 885, 891, 899 (D. Ind.); *Isbrandtsen Co. Inc.* v. *National Marine Engrs. Beneficial Assn.* 9 F. R. D. 541, 543 (D. N. Y.). It may well be that facts fairly could have been alleged that would have brought Walkinshaw within the principles applied in the *Donahue* case, but the present allegations do not do so.

5. A different situation exists with respect to the allegations of the bill, in effect that the treasurer of Local 901, the Massachusetts banks, and Ford hold in Massachusetts property of the International Union or owe debts to it.

Temporary injunctive relief (see *Gulda* v. *Second Natl. Bank,* 323 Mass. 100, 105) was granted restraining transfer of at least the alleged Ford credits and any International Union funds in the hands of the treasurer of Local 901. The docket entries indicate, although the record is not wholly clear on this, that similar relief was granted with respect to some bank deposits. The pleas do not deny the allegations that such assets of the International Union existed in Massachusetts. For the purposes of those pleas, as well as in considering the demurrers, these allegations must be taken as true. See *Kalmus* v. *Kalmus,* 330 Mass. 41, 42; *Feeney* v. *Feeney,* 335 Mass. 534, 537.

The Superior Court had jurisdiction to apply this property of the International Union quasi in rem to the satisfaction of at least any indebtedness for which all that union's members were liable. See *Rosenthal* v. *Maletz,* 322 Mass. 586, 590–594. Cf. *Feeney* v. *Feeney,* 335 Mass. 534, 539. Notice to the members of the International Union by substituted service under Rule 14 of the Superior Court (1954) would permit application of this property quasi in rem. See *Rosenthal* v. *Maletz,* 322 Mass. 586, 594–596. See also *Gulda* v. *Second Natl. Bank,* 323 Mass. 100, 104–105. The amended bill alleges that Reuther is the duly elected president of the International Union. This is a sufficient averment that at least one person served in accordance with Rule 14 is an officer whose standing ensures that notice to him gives sufficient notice to the membership to satisfy principles of due process.

6. The interlocutory decrees sustaining the "demurrers to the jurisdiction," the plea to the jurisdiction, and the pleas in abatement and the final decree are severally reversed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*