H. P. Hood & Sons, Inc. *vs.* Whiting Milk Company.

Suffolk.   December 4, 1962. — January 4, 1963.

Present: Wilkins, C.J., Whittemore, Cutter, Kirk, & Spiegel, JJ.

*Unfair Competition.   Unlawful Interference.   Equity Pleading and Practice,* Bill.

In a suit in equity by one milk dealer against another to enjoin unfair
competition by use of milk cartons similar to those of the plaintiff, the
allegations of the bill were construed as referring to and as controlled
by samples of the parties' respective cartons annexed to the bill.   [288]

Notwithstanding that, in a suit in equity by one milk dealer against another
to enjoin unfair competition, there were allegations in the bill respecting
a secondary meaning attached to the plaintiff's cartons, deliberate adoption by the defendant of cartons similar in general appearance to those
of the plaintiff with intent to confuse purchasers, and actual confusion, a
case for relief in equity was not stated where it appeared from sample
cartons of the parties annexed to the bill and controlling its allegations
that, although the cartons adopted by the defendant were similar in
shape and color scheme to those of the plaintiff, the printed designs on
the respective cartons were so different that the defendant could fairly be
said to have taken reasonable steps to distinguish its product from that
of the plaintiff.   [291–293]

Bill in equity filed in the Superior Court on February 7,
1962.

The suit was heard by *Lurie, J.,* on demurrer.

*Arthur D. Thomson (Jerome E. Weinstein* with him) for
the plaintiff.

*Harold Lavien* for the defendant.

Cutter, J.   Hood seeks to enjoin Whiting from "unfairly competing with" it by using milk cartons "substantially identical in size and shape" and colored in a combination of red and white "closely similar . . . in . . . tone"
to that used by Hood, which Hood alleges "had acquired
a secondary significance designating . . . [Hood] as the
source of origin of the . . . milk . . . sold in . . . [such]
cartons."   On information and belief, Hood alleges that
Whiting "deliberately discontinued its former blue, yellow,

and white color scheme and adopted a red and white color scheme with intent that its newly colored container would present a general appearance similar to that of . . . [Hood's] container, and would thereby confuse purchasers.'' It is further alleged that display of the Hood and Whiting cartons, particularly the half gallon containers, in self-service stores ''has, in fact, . . . misled purchasers into selecting'' a Whiting container instead of a Hood container.

Flattened samples of Hood's container and of Whiting's former and present containers were annexed to, and referred to in, the bill. There are substantial differences between the design of the Hood container and that of either Whiting container and in the portions of the respective containers upon which dark colored ink appeared.[1] The details of the design were not similar.

Whiting filed a demurrer which was sustained on the ground that the bill set forth no facts entitling Hood to equitable relief against Whiting. Hood appealed from an interlocutory decree sustaining the demurrer and from a final decree dismissing the bill.

1. We interpret the allegations of the bill as referring to, and as controlled by, the actual sample containers attached to the bill. See *Donahue* v. *Kenney,* 327 Mass. 409, 413, 414 (where, in passing upon a plea, a copy of a document attached to the bill and not denied was considered to be true). Cf. *Caton* v. *Reuther,* 341 Mass. 547, 553. The demurrer, addressed to the bill as a whole on the grounds of

---

[1] The only changes made by Whiting in adopting the new format for its container were (1) to print in red ink instead of blue ink the dark parts of its original design; (2) to change slightly the bonnet shown on the head, and to reveal the face, of a pretty dairy maid portrayed on its carton at a point similar to the point where Hood portrayed the head of a somewhat sombre bovine; and (3) to omit certain patches of yellow ink formerly used on the light portions of the Whiting container. The top of the new Whiting container is predominantly red. The Hood container's top is predominantly cream colored. Whiting shows at the bottom of the sides of each of its containers a dark band spotted with white daisies. The lower part of the sides of the Hood container is decorated by a summer farm scene with white clouds and dark colored cows grazing on a light colored meadow background. Hood largely (although not entirely) employs white letters on a red background. Many of Whiting's comparable printed letters are red on a white background. The type sizes on comparable portions of the two cartons are generally different.

want of equity (see *Baker* v. *Paeff,* 318 Mass. 366, 368), was properly sustained, if actual proof of the allegations of the bill, read as referring to these sample containers, would not entitle Hood to relief, and should have been overruled if upon such proof relief could be granted on any ground or for any purpose. We assume, for purposes of passing upon the demurrer, that the Hood carton before us has acquired a secondary meaning (if as a matter of law such a significance can be acquired in the circumstances), that Whiting intended that its new carton "would present a general appearance similar to that of" Hood's and would mislead purchasers into buying Whiting's milk instead of Hood's milk, and that purchasers have been misled. These assumptions, however, relate to and are limited by the actual appearance of the respective containers.

2. The Hood container and the Whiting container are made by the same manufacturer (Weyerhaeuser Company, Milk Carton Division) and are precisely the same shape. No contention appears to be (or could well be) made that this shape is not functional (see Restatement: Torts, §§ 741, 742) or that Whiting, or indeed any milk vendor, is not as much entitled as Hood to use such containers, just as any milk vendor may purchase and use ordinary milk bottles. Examination of the decoration of the two cartons shows no substantial similarity (apart from color) in design. We think it fair to say that the only resemblance (apart from the functional aspect of size and shape) is in the red color of the portions of the containers which are not the natural color of the cardboard, or, perhaps, is in the existence of the combination of red and natural color (inevitable, of course, if only one printing of the cardboard is to be employed).

The principle governing the acquisition of a right to protection in the use of color in connection with the marketing of goods was stated in *New England Awl & Needle Co.* v. *Marlborough Awl & Needle Co.* 168 Mass. 154, 156, "Of course a person cannot claim the monopoly of a color in connection with a particular line of trade, and very likely

not in connection with the labels of a certain kind of goods generally. But the most universal element may be appropriated as the specific mark of a plaintiff's goods *if it is used and claimed only in connection with a sufficiently complex combination of other things*"[2] (emphasis supplied). Injunctive relief has been granted, with appropriate limitations, where color and other elements in combination have operated to confuse the public. See *Hildreth* v. *D. S. McDonald Co.* 164 Mass. 16, 17 (relief against "a palpable imitation" of the plaintiff's red printed yellow wrappers of molasses candy); *Grocers Supply Co.* v. *Dupuis,* 219 Mass. 576, 578-579 (labels "simulating those of the plaintiff in color, design and reading matter" on similar packages with "like trade names"); *California Wine & Liquor Corp.* v. *William Zakon & Sons, Inc.* 297 Mass. 373, 376-377 (brand labels on two similar bottles filled with the same whiskey, one brand sold under the name "Four Aces" and the other brand under the name "Royal Flush," contained playing cards similarly arranged, trade names printed in an arc upon corresponding spots of the label, identical descriptions of the product in about the same spot on the label, and the same color scheme); *Norton* v. *Chioda,* 317 Mass. 446, 447-448, 451 (the distinctive combination of four colors and a roof light on the plaintiff's taxicabs was protected from imitation by the defendants which caused confusion when vehicles were seen from the front).[3]

Other courts have been slow to protect labels, packages, or products where similarity of color alone was involved.

---

[2] The opinion continued (p. 156), "The plaintiff did not claim the exclusive right to brown labels for awls, but it claimed the exclusive use of the brown color in the combination which we have described. If the only other element besides the color had been a box of a certain size and a label of a certain shape, the case might be different . . . but when there is added an inscription, which both in its pictorial aspect of black marks and in its meaning was calculated to confuse if not to deceive, the plaintiff's claim seems to us moderate. . . ." In that case the two boxes were, except for a few words, "indistinguishable in every particular" (p. 155).

[3] Cases dealing with analogous problems include *American Waltham Watch Co.* v. *United States Watch Co.* 173 Mass. 85, 87, *George G. Fox Co.* v. *Hathaway,* 199 Mass. 99, 102-103, *Reading Stove Works, Orr, Painter & Co.* v. *S. M. Howes Co.* 201 Mass. 437, 440-441, *Forster Mfg. Co.* v. *Cutter-Tower Co.* 211 Mass. 219, 222-223, and *Skil Corp.* v. *Barnet,* 337 Mass. 485, 494-495.

See *Campbell Soup Co.* v. *Armour & Co.* 175 F. 2d 795, 797–799 (3d Cir.); *Fram Corp.* v. *Boyd,* 230 F. 2d 931, 934 (5th Cir.); *Norwich Pharmacal Co.* v. *Sterling Drug, Inc.* 271 F. 2d 569 (2d Cir.). See also *Joseph Schlitz Brewing Co.* v. *Houston Ice & Brewing Co.* 250 U. S. 28, 29–30. Cf. *William R. Warner & Co.* v. *Eli Lilly & Co.* 265 U. S. 526, 531–532.[4] Nevertheless, when taken in connection with other factors, color is an element to consider where unfair competition by intentional passing off is in issue. See Callmann, Unfair Competition and Trade-Marks (2d ed.) § 82.1 (h), and also §§ 71.5–71.5 (b); Nims, Unfair Competition and Trade Marks (4th ed.) §§ 116–133. See also *Gillette Safety Razor Co.* v. *Triangle Mechanical Labs. Corp.* 4 F. Supp. 319, 322–323 (E. D. N. Y.); *Pro-phy-lac-tic Brush Co.* v. *Abraham & Straus, Inc.* 11 F. Supp. 660, 664 (E. D. N. Y.).

Relief may be granted against " [o]ne who . . . markets goods with an unprivileged imitation of the physical appearance of another's goods." Restatement: Torts, § 711. There is "an unprivileged imitation . . . if . . . the . . . imitated feature has acquired generally in the market a special significance identifying the other's goods, and (i) the . . . imitation is likely to cause prospective purchasers to regard his goods as those of the other, and (ii) the . . . imitated feature is nonfunctional, or, if it is functional, he does not take reasonable steps to inform prospective purchasers that the goods which he markets are not those of the other." Restatement: Torts, § 741. These principles in effect have been applied in the Massachusetts cases already cited.

The allegations of the bill would bring this case within § 741, were it not for the fact that the actual containers before us reveal that by its printed design and by its sub-

---

[4] Other cases dealing with the general problem include *Diamond Match Co.* v. *Saginaw Match Co.* 142 Fed. 727, 729–730 (6th Cir.), *Life Savers Corp.* v. *Curtiss Candy Co.* 182 F. 2d 4, 5–6 (7th Cir.), *E. Regensburg & Sons* v. *Juan F. Portuondo Cigar Mfg. Co.* 136 Fed. 866, 867 (E. D. Pa.), *A. G. Morse Co.* v. *Walter M. Lowney Co.* 256 Fed. 935 (N. D. Ill.), *Radio Corp. of America* v. *Decca Records, Inc.* 51 F. Supp. 493, 495, 496, 498, 499 (S. D. N. Y.), and *Van Brode Milling Co. Inc.* v. *Cox Air Gauge System, Inc.* 161 F. Supp. 437, 438–439 (S. D. Cal.). Cf. *My–T Fine Corp.* v. *Samuels,* 69 F. 2d 76, 77 (2d Cir.).

stantial retention of its earlier design (but in a new color), Whiting has taken "reasonable steps to inform prospective purchasers that the" milk in its cartons is not that of Hood. We must determine whether the appearance of the actual cartons sufficiently establishes that the bill states no cause of action, despite the allegations that "the overall distinctive appearance of" the Hood carton has come to have a "secondary significance," that Whiting "adopted a red and white color scheme with intent that its newly colored container would present a general appearance similar to that of . . . [Hood's] container," and that there has been actual confusion by purchasers. Although Whiting's intent seems relevant only if Whiting has done what it is not entitled to do, the existence of such an intent may be considered in determining that question. See *My-T Fine Corp.* v. *Samuels,* 69 F. 2d 76, 77 (2d Cir.); Callmann, Unfair Competition and Trade-Marks (2d ed.) § 82.1 (h), at pp. 1469–1473. See also Restatement: Torts, § 729, comment f. In a general way, but only because of color and functional shape, the two cartons are similar and the possibility of confusion exists. We assume that it "is sufficient . . . [to show imitation if] the appearance of the whole [Whiting carton] is substantially the same as that of the [Hood] original." Restatement: Torts, § 741, comment c.

We think that since Whiting has reasonably distinguished its product from that of Hood, it is as much entitled to use red upon its cartons as is Hood, or indeed any of the other numerous milk dealers which, as a matter of common knowledge, are operating in the Boston metropolitan area.[5] All of these dealers must use bottles and cartons similar in shape and size to those used by Hood and Whiting. To adapt Judge Goodrich's language in *Campbell Soup Co.* v. *Armour & Co.* 175 F. 2d 795, 798 (3d Cir.), "What . . . [Hood is] really asking for . . . is a right to the exclusive use of . . . [cartons] which are half red and half white for

---

[5] Many of these, of course, may be smaller dealers. Perhaps, only very substantial dealers would make sales of half gallon packages of milk in supermarkets.

. . . [milk]. If . . . [Hood] may thus monopolize red . . . the next . . . [producer] may monopolize orange . . . and the next yellow . . . . Obviously, the list of colors will soon run out."[6] This use of red "is far too broad in its potentialities of exclusion to be countenanced by a [c]ourt." See *Radio Corp. of America* v. *Decca Records, Inc.* 51 F. Supp. 493, 496 (S. D. N. Y.).

We hold that, in the circumstances, the color red alone is insufficient to give rise to any secondary meaning with reference to Hood's milk if the color of the carton is not connected with other factors which here do not exist, as the cartons themselves establish. Whiting has done only what it may properly do in using red ink on the natural cardboard. It has maintained its distinctive printing design, which as a design cannot reasonably be confused with that of Hood. If any substantial or long continued confusion (and it is hard to imagine how any such confusion could be more than temporary) results solely from the color similarity, that is a confusion from which, upon the allegations of the bill and the sample cartons, Hood is not entitled to be protected. With the actual cartons before us we are in a position to ascertain that Hood, even if it proved all its allegations fully, would have no basis for equitable relief.

Hood places some reliance upon the case of *Hi-Land Dairyman's Assn.* v. *Cloverleaf Dairy,* 107 Utah 68. Although the facts in that case in various respects were like those here alleged, the printing of the actual cartons was apparently more similar than is the printing of the red Hood and Whiting cartons. In any event, if there is anything in the *Hi-Land* case inconsistent with our conclusion, we do not follow it.

3. The interlocutory decree sustaining the demurrer and the final decree are affirmed.

*So ordered.*

---

[6] If a design is to be printed in only one color upon the natural cream-colored surface of the waxed cardboard, the number of colors available is obviously limited. Conceivably each producer may wish, for his own and the public's convenience, to sell each grade or type of milk (e.g., Grade A, skim milk, homogenized milk, buttermilk, chocolate flavor, etc.) in a different colored carton. This factor would further affect the number of available colors.