FIRST FIDUCIARY CORPORATION *vs.* COMMISSIONER
OF BANKS.

No. 96-P-386.

Middlesex. June 9, 1997. - September 2, 1997.

Present: KASS, SMITH, & LAURENCE, JJ.

*Fiduciary. Bank. Commissioner of Banks. Administrative Law,* Agency. *Words,*
"Trust company."

Discussion of G. L. c. 167 and G. L. cc. 167A - 172A, setting forth the institu-
tions whose banking activity is regulated by the office of the Commis-
sioner of Banks. [459-461]
A business corporation organized under G. L. c. 156B, that acted as a trustee,
as an investment adviser and as a fiduciary, but neither accepted deposits
nor extended credit, was not subject to regulation as a G. L. c. 172 trust
company by the office of the Commissioner of Banks pursuant to G. L.
c. 167, § 37, but rather was subject to the requirements of G. L. c. 203,
including §§ 4A, 4B and 14B, relating to the conduct of fiduciaries.
[461-464]

CIVIL ACTION commenced in the Superior Court Department on
June 22, 1995.

The case was heard by *Catherine A. White*, J., on motions for
summary judgment.

*Leonard M. Davidson* for the plaintiff.

*Rebecca P. McIntyre*, Assistant Attorney General, for the
Commissioner of Banks.

KASS, J. By complaint for declaratory judgment, First
Fiduciary Corporation (First Fiduciary) sought a determination
that the office of the Commissioner of Banks (OCB) lacked the
authority it had asserted to regulate a corporate fiduciary that
neither took deposits nor lent money. A judge of the Superior
Court, proceeding on cross motions for summary judgment,
ruled that First Fiduciary's business was subject to regulation
by OCB. We conclude that, because its activities are limited to
corporate trusteeship and do not involve deposits, loans, or

other areas of banking business, First Fiduciary is not a bank for purposes of G. L. c. 167, § 1, and is not subject to OCB's oversight under G. L. c. 167, § 37.

First Fiduciary is organized under G. L. c. 156B, the business corporation law. Its articles of organization state as its purposes: to serve as trustee under inter vivos and testamentary trust instruments and under retirement, pension, and profit-sharing plans; and to act as an investment adviser and as a fiduciary to the general public and lending or banking institutions.[1] As a trustee, First Fiduciary holds legal title to trust assets. It hires professionals to provide financial and investment advice, as well as accounting services. The organization of First Fiduciary was a product of concern about conflicts of interest by members of a law firm, Schlesinger and Buchbinder, who from time to time acted as trustees, upon the request of clients for whom they had created trusts, in connection with estate plans, asset protection plans, or other business purposes.

First Fiduciary's position is that as OCB neither claims authority to regulate individuals or partnerships whose occupation is to act as trustees, nor purports to regulate corporations which act as trustees incident to other business, OCB ought not to claim authority to regulate a fiduciary simply because it is organized as a corporation. More to the point, Fiduciary asserts, there is no statutory basis for regulation of a corporation that does nothing except perform fiduciary services; rather such legislative restraint as exists regarding trustees is that which is imposed by G. L. c. 203, §§ 4A and 4B.

OCB's position is that a corporate fiduciary is a trust company — a proposition for which there is some literal statutory support in G. L. c. 203, § 4A, — and that as trust companies are subject to bank regulation, so is any corporate fiduciary. More fundamentally, OCB argues that a corporation that "walks and talks" like a trust company, must be one, whether chartered as such or not, and should not be allowed to "evade" the regulatory machinery erected by chapters 167 through 172A of the General Laws.[2] Somewhat curiously, OCB embraces its position only as to the corporate form and not to other sorts of business

---

[1]The articles state more general purposes as well.

[2]OCB's vision of fiduciary activity wholly free of governance is overwrought. Apart from the controls G. L. c. 203 places upon trustees (see discussion, *infra*), there is a long history of equitable supervision of trusts and trustees by the courts, which, at the behest of beneficiaries, routinely compel

organizations. Were First Fiduciary a limited liability partnership, for example, OCB, as we understand its position, would not claim regulatory authority over it.

When determining how a statutory scheme shall apply, we make a deep bow to the administrative agency charged with its administration, *Protective Life Ins. Co.* v. *Sullivan*, 425 Mass. 615, 618 (1997), but the posture is not supine when that interpretation is contrary to the language of the statute and its underlying purpose. *Ibid. Victoria, Inc.* v. *Alcoholic Bevs. Control Commn.*, 33 Mass. App. Ct. 507, 511-512 (1992). An administrative agency may act only to the extent that the Legislature has given it the statutory power so to do. *Commissioner of Rev.* v. *Marr Scaffolding Co.*, 414 Mass. 489, 493 (1993).

Much help in evaluating the contentions of the parties comes from a survey of the architecture of the Massachusetts banking laws. General Laws c. 167 is the repository of the statutes dealing with State supervision of a bank, a word that § 1 of c. 167 defines as:

> "a savings bank, co-operative bank, trust company, any corporation authorized to do the business of a banking company under c. 172A [a Morris plan bank] or any individuals, partnership, association or corporation, incorporated or doing a banking business in the commonwealth, subject to the commissioner of banks."

Section 2 of c. 167 confers on the commissioner the all important power to examine annually banks subject to the commissioner's oversight. There are in c. 167 provisions, among others, that relate to consumer protection, statements and reports, examination of directors, and closing of banks.

The particular control provision that OCB relies on is G. L. c. 167, § 37, inserted by St. 1982, c. 155, § 5, which provides, "No domestic or foreign corporation or individual, partnership or association shall conduct the business of a savings bank, co-operative bank, savings and loan association, credit union, trust company or banking company unless authorized to do so under the laws of this commonwealth . . . ." Those authorizing laws

trustees to perform duties, enjoin breaches of trust, compel redress of breaches of trust, remove faithless trustees, and appoint receivers to administer trust property. See Restatement (Second) of Trusts § 199 (1959).

appear in chapters 167A through 172A, the contents of which we now identify.

Chapter 167A pertains to bank holding companies; c. 167B to electronic banking; c. 167C to bank locations[3]; c. 167D to deposits and accounts[4]; c. 167E to mortgages and loans; c. 167F to investments and other powers; and c. 167G to trust departments of banks (§ 2 of which provides that a bank may have a trust department).[5] Chapter 168 pertains to savings banks; c. 169 to receipts of deposits for transmittal to foreign countries; c. 170 to co-operative banks; c. 171 to credit unions; c. 172 to trust companies; and c. 172A to Morris plan banks.

Of those various kinds of institutions, the one of interest, and the one upon which OCB concentrates, is the trust company, authorized by c. 172. "Trust company," according to G. L. c. 172, § 1, means "a trust company incorporated as such in the commonwealth," a definition that does not notably enhance understanding. Powers conferred by G. L. c. 172, § 1A, are all those:

> "expressly granted by law and whatever further incidental powers may fairly be implied from those expressly conferred and such as are reasonably necessary to enable it to exercise fully those powers according to common or accepted banking customs and usages."

Through incorporation by reference to chapters 167C through 167G, inclusive, see G. L. c. 172, § 2, the statute confers on trust companies the power: to take deposits and accounts (G. L. c. 167D); to make loans secured by real estate mortgages or upon personal security (G. L. c. 167E); to make investments, to insure deposits through the Federal Deposit Insurance Corporation (G. L. c. 167F); to maintain, *separately from other banking functions*, a trust department to manage money and other

---

[3]Here there is a slightly different definition of bank. For purposes of c. 167C it is "a savings bank, co-operative bank, or trust company subject to the supervision of the commissioner of banks."

[4]Under c. 167D, a bank is a "savings bank, co-operative bank or trust company incorporated as such in the commonwealth."

[5]As one proceeds through chapters 167E, 167F, and 167G, the definition of "bank" alternates between "a savings bank, co-operative bank, or trust company subject to the supervision of the commissioner of banks" and "a savings bank, co-operative bank, or trust company incorporated as such in the commonwealth." Nothing turns on the difference in definitions.

property as a fiduciary (G. L. c. 167G); and to conduct business at such locations as will benefit the public (G. L. c. 167C). Upon close inspection, a c. 172 trust company is a State chartered commercial bank which may — it need not — provide fiduciary services. A trust company is not, however, restricted to that function.

Our overview of the banking statute yields the wholly unastonishing conclusion that what the commissioner of banks or OCB regulates are banks and banking activity. Indeed, G. L. c. 167, § 37, reinforces that observation by prohibiting the words savings bank, cooperative bank, savings and loan association, credit union, trust company, or banking company on a sign at the place of business unless authorized to conduct such a business, i.e., under c. 167 through c. 172A. We must inquire whether there is any hope for OCB's syllogism that, as a commercial bank can offer fiduciary services, any corporation that renders fiduciary services is a bank.

Traditionally, banks have as their base functions the acceptance of deposits, the discounting of bills and notes, and the making of loans. See 1 Graham, Banking Law § 1.03 (1997). In *United States* v. *Philadelphia Natl. Bank*, 374 U.S. 321, 326-327 n.5 (1963), the Court stated:

> "[t]he principal banking 'products' are of course various types of credit, for example: unsecured personal and business loans, mortgage loans, loans secured by securities or accounts receivable, automobile installment and consumer goods installment loans, tuition financing, bank credit cards, revolving credit funds." The court then described banking services to include: "acceptance of demand deposits from individuals, corporations, government agencies, and other banks; acceptance of time and savings deposits; estate and trust planning and trusteeship services; lock boxes and safety-deposit boxes; account reconciliation services; foreign department services (acceptances of letters of credit); correspondent services; and investment advice."

In interpreting the phrase "doing banking business" in 1921, the Attorney General wrote: "[t]he banking business has three different elements, — issuing negotiable notes, discounting notes and receiving deposits." 6 Op. Atty. Gen. 40, 41 (1921).

To be sure, the definition is dated. Although the banking business has evolved, and banks currently offer a wider variety of services, the Attorney General's definition illustrates that the core characteristics of a bank or banking business have been and remain taking deposits and extending credit.[6]

First Fiduciary does not receive deposits in the sense that a bank receives funds from a customer who may draw on them on demand, in exchange for which the bank may create earnings by lending out the cash from deposits to third parties. Rather, First Fiduciary accepts money for the purpose of investment, and the beneficial interest in that money and any accession to wealth that money generates remain at all times with the original owner. In the case of banks, which make loans of deposited funds against notes, there are inherent risks of loans going bad. Accordingly, banks are required to maintain reserves of a certain percentage against outstanding loans. As to this, in the case of trust companies, see G. L. c. 172, § 31. First Fiduciary, while it invests the money placed in its care, is not engaged in the business of money creation through lending. Although money invested is surely at risk, the peril of economic instability is less. Such is the inference we may draw from the less detailed and less active supervision imposed by G. L. c. 203, § 4B, on persons who act as a fiduciary. Those persons are defined by G. L. c. 203, § 4A, as "any corporation, bank, trust company or individual who charges for its or his services while acting . . . [as a fiduciary under a will or trust instrument], and whose gross annual compensation from all such fiduciary services is in excess of twenty-five thousand dollars for each of the three next immediate preceding taxable years." The separation in the quoted language of a corporation performing fiduciary services from a trust company performing fiduciary services strongly supports our conclusion that the Legislature does not intend that corporate fiduciaries who neither accept deposits or make loans be regulated as a c. 172 trust company, i.e., one subject to supervision by OCB.

The essence of the banking function is: the debtor-creditor relationship — the bank itself being a debtor to its depositors, while its loan customers are debtors to the bank. That relation-

---

[6]See, e.g., Black's Law Dictionary 144 (6th ed. 1990): "A bank is an institution . . . whose business is to receive money on deposit, cash checks or drafts, discount commercial paper, make loans, and issue promissory notes payable to bearer, known as bank notes."

ship has always been recognized as fundamentally distinct from the trustee-beneficiary relationship developed by the law of trusts. See Restatement (Second) of Trusts § 12, comments a and 1, at 35-36, 41 (1959). See also Loring, A Trustee's Handbook §§ 3.2.1, 3.2.4, at 18, 20 (1994). OCB's assertion that restricting its regulatory authority to corporations that make loans or accept deposits is "an unsupportedly narrow interpretation" of such authority is itself unsupported by any cited judicial precedent or relevant legislative history. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

Contrary to OCB's claims, First Fiduciary will not be free to milk beneficiaries at will in the absence of OCB regulation. General Laws c. 203 contains numerous safeguards. (See also note 2, *supra*).

Among the requirements imposed by G. L. c. 203, § 4B, is that a fiduciary — including a corporate fiduciary — must inform customers: of the schedule of charges; in reasonable detail what services will be rendered; of the history, investment policy, permitted investments, management fees, and audits of assets that are placed for care and investment in a pooled fund; of the fiduciary's facilities and procedures for selecting and supervising investments of funds that are to be invested separately; that the interests of the fiduciary and the customer may in certain circumstances conflict; and that the trust documents should be drawn or at least reviewed by the customer's own lawyer. Section 14B of c. 203 spells out certain requirements for record keeping and segregation of assets held for customers.

We think it convincing from the content of the provisions of G. L. c. 203 that we have discussed and from the concern with banking manifested in G. L. c. 167, that corporate fiduciaries engaged solely in trust and asset management are not subject to regulation of OCB. There is no rational legislative objective in treating corporate fiduciaries differently from individuals or other business organizations performing the same function.[7] It seems highly doubtful that corporate fiduciaries would be more closely regulated because the liability of a corporation is limited to its assets. The same would be true of a limited liability

[7]We take judicial notice of the extensive involvement of lawyers and law firms in the administration of estates and trusts. See *H.P. Hood & Sons* v. *Whiting Milk Co.*, 345 Mass. 287, 292 (1963); *Nantucket* v. *Beinecke*, 379 Mass. 345, 352 (1979).

partnership. We are not led to a different conclusion because under G. L. c. 203, § 4A, "any corporation or association which acts as a corporate fiduciary or trustee within the commonwealth" is "a Trust company." The usage in § 4A is in connection with regulations in § 4B that pertain to trusts and is unconnected with "trust company" in the c. 172 banking sense. Contrast *Green* v. *Board of Appeals of Provincetown*, 404 Mass. 571, 573 (1989).

The judgment declaring that First Fiduciary, as now constituted and doing business, is subject to regulation by OCB is reversed, and a judgment shall be entered declaring that First Fiduciary, as now constituted and operating, is not subject to regulation by OCB.

*So ordered.*